Good morning. May it please the Court, Steve Hirsch for Appellant Stephanie Jensen. With me at counsel table today is my law partner, Jan Little, who tried the case. Ms. Jensen's appeal raises three issues. Her conviction under a diluted willfulness instruction, her imprisonment in violation of the so-called no-knowledge clause, and her sentencing enhancement based on supposedly misleading third-party statements procured by her counsel. I'd like to start with the willfulness instruction. Intent was the pivotal issue at Stephanie Jensen's trial. And because backdating stock option grant minutes is not in and of itself illegal, as the district court actually instructed the jury, it was critical both in Mr. Reyes's case and in Ms. Jensen's that the government portray the backdating as an attempt to hoodwink the finance department and therefore influence the way the corporation accounted for its option grants. If that theory was false and founded on prosecutorial misconduct, then Ms. Jensen's conviction must fall just as surely as Mr. Reyes's. But Ms. Jensen's case presents additional considerations that flow from her limited and subordinate role in the backdating and her lack of accounting responsibilities or expertise. Ms. Jensen is not an accountant. She had no accounting responsibilities at Brocade. She had no role in preparing financial statements. She had no understanding of the arcane accounting rule, APB 25, that once governed stock option-related compensation charges, a rule so arcane that it tripped up over 200 public companies. Let me understand this. She was the head of human resources, is that correct? Correct, Your Honor. Now, that's a term that's used that I understand usually means the people who are in charge of personnel, hiring and personnel practices. Correct, Your Honor. So if and so if something were a recruitment tool for personnel to recruit new employees, new hires that are wanted to work for the company, presumably human resources would be – would know what was going on in that area, maybe not accounting, but in hiring and firing. Yes, Your Honor. In fact, our briefs have taken pains to point out that stock options are a little bit like a prescription medicine with a desirable human resources effect, which the human resources folks knew all about, and a side effect, an accounting side effect that they didn't know about. And the government's own witnesses were almost – were actually uniform on this point, that we didn't know that there was an accounting implication to putting the past date in the ray lines of the grant minutes. We didn't know that there was anything improper about it. We discussed it openly. We trained each other how to do it using training memos. That was the uniform testimony on this specific practice. So – So your three points, though, are really not that she didn't have the knowledge, but the first one is whether the instruction is correct. Yes. So I'll move to those, Your Honor. Yes. So this Board sets out the instruction that the district court rejected, on top of the one that it gave on the bottom. The one that it rejected would have required proof that Jensen acted with a purpose of violating a known legal duty, in other words, that she knew her conduct was unlawful. This instruction is the one given at the trial of CEO Greg Reyes. It's also the instruction given with the government's consent in the backdating trial of former McAfee general counsel Kent Roberts, who was tried in the northern district after Ms. Jensen. But it was rejected. Your Honor, I'm sorry. Okay. It was rejected in the case of Stephanie Jensen, the woman in charge of human resources who had no accounting background or responsibility. Is the first – is the first instruction, the one that you wanted? Yes, Your Honor. Violating a known legal duty. That's what we requested. That means that she has to know that it's unlawful. It's a crime. That's correct, Your Honor. Okay. The second one, that she acted willfully, is the one that was given. It says – They are both about willfulness, but the chief distinction is that ours requires proof of purpose of violating a known legal duty. That is knowledge of unlawfulness. Right. Yes. And the next one is about knowing the falsification to be wrongful. To be wrongful. Wrongful. Now, if you on – if you in 2009 are in human resources and know that someone received a stock option today that had never worked for the company before, that was dated or that permitted them – was treated as if they could buy it, that was in 2002. So it was dated so it was 2002. Would you know that that is false? In – today in 2009, would the – Did you know that the option is given as if it had been given earlier?  Which I thought was the way that it's – Your Honor, much has changed in the landscape since then. APB 25, the arcane rule that so many public companies messed up, it doesn't even exist anymore. Well, let's put it this way. If you gave somebody – forget whatever year, forget the additional knowledge, but you gave somebody a stock option, you've been working with your company for five years, and you say I'm going to give you a stock option and I want to give it to you at a lower price than today's market price. So I'll give it to you as of our value a month ago. Would you know – somebody necessarily know that that was wrongful or a violation of a known legal duty? And is there a difference? Well, Your Honor, the district court properly instructed the jury that backdating in and of itself is not illegal. So this is really an accounting crime. And what Jensen had to know to be properly convicted was that there is a law out there that imposes gap principles on a wide range of corporate documents and records and that her specific conduct could prevent brocade from complying with that statute. Well, the real problem is that what's the difference between wrongful and known legal duty? And have we – has the court already said that there is no difference? Your Honor, there's a great gulf, and I think I don't even have to use a hypothetical to explain that gulf. I can use something right from the trial. At the trial, the government repeatedly trumpeted the theory that Jensen's method of doing these grant minutes violated the internal company policies set forth in the Brocade Employment Reference Guide. It elicited a great deal of testimony about the Employment Reference Guide. It put the Employment Reference Guide in evidence. In closing, it projected the Employment Reference Guide up on a screen and then pointed out again that what she was doing was not like what it says in the Employment Reference Guide. So that would be wrongful but not a violation? Correct, Your Honor. We can't exclude the possibility that the jury – for the purposes of this statute, it means wrongful. Let's talk about Turalo. Here's Turalo. And, you know, it's our position that Turalo, in fact, compels the stronger instruction. Let me say why. First of all, the background rule is set by Bryan v. U.S., which says that when willfully appears in a criminal statute, it usually means with knowledge of unlawfulness. Turalo is a minor deviation from that background rule specifically tailored to Section 78 FFA, the omnibus criminal provision of the 1934 Securities and Exchange Act. And here's what it reasoned. It looked up here to this first clause of 78 FFA and noted the use of knowledge. Then it looked to the following clause, which governs material misrepresentation in a required filings, and noted that that clause, the punishment clause of the 34th Act, uses willfully and knowingly. And it reasons if this word here in isolation means with knowledge of unlawfulness, well, what more could this phrase here, willfully and knowingly, mean? There's no room for it to go. Therefore, Turalo effectively gave willfully a demotion, as used here in this version of the clause, and said it's got to mean knowledge of wrongfulness so that this clause has room to operate. Now, an ineluctable conclusion to be drawn from this analysis is that when willfully and knowingly are used to define a crime under the 1934 Act, they require knowledge of unlawfulness. And that is what we have here, because in this case the conviction rested on two statutes working hand in hand simultaneously, 78 FFA and the Foreign Practices Act Books and Records Provision, subsection B5, which contributed an additional scienta requirement, namely knowingly. Therefore, this was a willfully and knowingly case, just like the second clause of 78 FFA, which was distinguished in Turalo. Turalo had no occasion to think about the Books and Records Provision. It didn't discuss it at all. This is a willfully and knowingly case and is absolutely consistent with Turalo, more consistent for the government to be required to prove that, required to prove knowledge of illegality, knowledge of unlawfulness. Now, I fully expect that the government will stand up here in a few moments and try to muddy the waters by culling from the trial record the worst evidence it can cite about conduct that it views as furtive or secretive or otherwise indicative of bad intent. But this will be a pointless exercise for two reasons. First, that evidence has no bearing on whether the willfulness instruction was right or wrong. It only relates to whether the instruction, if wrong, was harmless error. But even the government doesn't believe that, not in this trial where intent was the core issue. That's undoubtedly why the government chose to waive any harmless error argument by not briefing it before you. Second, even if harmless error were at issue here, the government's evidence is equally consistent with the theory repeatedly urged at trial that she was violating company policy and employment reference guide. This jury could well have convicted under a belief that she was acting, quote, unquote, wrongfully because she was proceeding in known violation of a company reference guide. And as long as that is a possible basis of the conviction, it cannot stand. I'm about out of time. I'll just very briefly mention, because I'd like to reserve my time for rebuttal if I may, I'd like to mention our no knowledge clause argument. This was an extremely important issue in this case where the defendant was a human resources professional who had nothing to do with SEC regulations. Jensen more than met her burden on this defense. She submitted evidence that her background and experience are in areas that have nothing to do with SEC rules and regulations, that she had nothing to do with the SEC reporting process, that none of the individuals who worked with her drew any connection between her work, their work on option grants and SEC regulations, and that none of more than 50 deponents in the related SEC action remember discussing anything connected to any SEC rule with Jensen. Now, the government's response appears to be that as a matter of law, Jensen couldn't meet her burden under the clause unless she waived her Fifth Amendment privilege and testified to her own lack of knowledge. But there's no authority for that proposition. Jensen carried her burden and can't be imprisoned. And I believe I'll have to rely on my briefs regarding the obstruction enhancement, but merely say that it's unprecedented and plain wrong to punish Jensen for third-party statements procured by her lawyer in support of a motion, especially when the district court itself conceded that those statements might be technically true. Thank you. Are there any questions? Thank you. Jensen argues that she's entitled to either a new trial or at least a new sentencing based on legal error, but because this Court, because the district court filed the precedence of this Court, we believe those claims should be denied. And I'm hoping that by standing up here I will un-muddy the waters rather than muddy them for you. The first issue as to the legal instruction on willfulness, the Court took the exact language from this Court's 2004 decision in Turalo. Turalo, which was interpreting the exact same word in the exact same statutory provision, said, That's the standard this Ninth Circuit has put out, and that's the standard the district court followed and was required to follow. The Supreme Court in United States v. Santos has said the same word in the same statute should be given the same meaning. And there are no cases from any circuit finding that willful for purposes of the securities law violations should have the meaning that the defendant has suggested, and that is the Sheik or Ratzlaff standard. Both Sheik and Ratzlaff have said that their standards are limited to complex statutes and statutes likely to ensnare innocents, and they very much have in their holdings. And here the statute at issue is knowingly falsifying books and records, and knowing falsification is simply not an innocent act. Well, what about the argument that she wasn't making the books and records? That she wasn't making the books? She wasn't making the books and records. Right. Well, the statute was charged under an aiding and abetting theory for the statute, and as to the rule 13b.2.1, it allows for either direct or indirect falsification. So she didn't need to be the primary actor as long as she was aiding and abetting others in making false books and records. And she was helping Reyes make false corporate grant records by providing him with a date after the fact that he should then use to say he was giving the grants. In other words, she would say, you know, on January 2nd, oh, you should use the November 1st grant date, because that had a lower the stock price was lower then. And so she was certainly helping to create false corporate grants. Oh, I guess I understand that she knows that the date that they're using is not the date that the stock option is being given. But I guess I'm having a little trouble with the idea that therefore she knows that the records of the company reflecting their expenses are going to be false. She may not have to know that there's a regulation that makes it criminal, but doesn't she have to at least know that there's going to be some books or records of the company that are going to be false? Well, the books and records are the grant minutes. I mean, those are the records of the company that were falsified, and she knows she's falsifying them. But there was further evidence that she knew that these had accounting implications. Okay. So as it was charged, the books and records she was falsifying were the corporate minutes. Corporate minutes. Yes, exactly. But even to the end, of course, they're not challenging the sufficiency of the evidence on that for purposes of conviction. They are, however, challenging it when it comes to the no knowledge clause, and so I'd like to turn to that. Before you do that, I want to understand about the difference between wrongful and unlawful. All you have to know is that something is wrongful. The example counsel gave is contrary to company rules, and that's enough for a conviction? Well, the wrongfulness is really getting at the intent, that you're doing it for a bad purpose. And Torello talks a little bit about that, that there are many cases interpreting willfulness generally. There are the old cases like the Spies case, which talked about bad purpose or evil motives. Even though you don't know there's anything illegal about it? Correct. You don't have to know that it's in violation of the law, but you have to be doing it for a bad purpose. And you want to do something that's, as far as you know, not illegal at all. You just like to, you know, violate the company's rules because you think it's a better practice, as far as you're concerned, and you know it's wrong, you know it's not supposed to violate the company's rules. Well, Your Honor, I think one way to think about it is, although it's a scienter requirement, that is, it goes to the intent with which you're making the no falsification, in some sense, the purpose of it in this statute is for a materiality purpose. In other words, you could knowingly falsify something that no one would care about. And the willfulness that you have to know that it's wrong, in some sense, provides a standard for saying, well, we don't care about insignificant or trivial knowing falsities. We care about those which would be that are, in some sense, wrongful and that have been wrongful. This is probably a much longer discussion than we have time for today. Okay. And there's a lot of law on it. But I'd like to hear about the other two points. Why is it obstruction of justice when a defendant's lawyer goes to a third party and gets a statement from him? Have you anywhere any precedent for that? And I don't mean a case where a defendant is standing next to his lawyer and the judge asks the lawyer a question. He turns to the defendant.  I'm not talking about that kind of a case. Do you know any case anywhere where a witness is punished because his lawyer went and got a false statement from someone else? I don't know of a case where the lawyer proffered the statements of someone else specifically. But we certainly have cases where the statements of third parties were proffered on the defendant's behalf, and those have been found to be constitutive obstruction. We also have cases where the lawyer proffers statements to the court that are false, purporting to give information about the defendant, which the defendant knows are false, and the defendant stands out of regard. Well, that's different. There the lawyer has given the information to the lawyer about himself. I went to high school when he didn't. I lived in Alaska when he didn't. And he tells that to the lawyer. The lawyer reports it to the court. Well, Your Honor, I think it's also That's not what I'm asking about. I'm asking about a third party. Who gives a statement to a lawyer? As I say, I don't have a case that specifically holds that. But I have the two other cases, and I think they can be put together, and particularly in this case, and here's why. Jensen had given a 302 to the had given an interview to the FBI and had said we were backed and said backdating was going on. And her lawyer had that statement. So when the lawyer went and got the statement from Reyes saying no backdating was going on, she had every reason to believe that that was false. And Jensen certainly knew that it was false. And they put they proffered that before the court to show that it would be exculpatory as to Jensen in order to get a motion to sever. The lawyer did that right in front of Jensen, who stood idly by. And she did, in fact, get a severance based on that. So I think, you know, in this case, both the lawyer and Jensen knew that it was false, and they still proffered it to the court. So when you hire a lawyer to defend you in a criminal case, the lawyer goes out and finds a witness who says something that helps you. And that's not your view of what happened. But a witness is going to come in, your lawyer's gotten one, says I've got a witness, you're supposed to get up and say no, that's not a good witness because I don't think that witness is going to tell the truth. And if you don't do that, you get an additional sentence? She's allowing her lawyer to proffer what she knew was knowingly false information in order to get a severance in this case. And I think that should be sufficient. You know, it's bad enough that we punish defendants for going to trial, and then we punish them whenever they're convicted because if they did take the stand, they must have said something untrue. And now, even if they don't take the stand, you want to punish a defendant because he allows the lawyer to put on a defense that really isn't right. Well, this wasn't the defense that the defendant put on the trial. No, but you say the defendant's responsible. Any time a lawyer puts on something the defendant knows isn't correct. I think if the defendant sits idly by and lets the lawyer put forward pejorious testimony on her behalf, that, yes, she should be entitled to an obstruction. You may disagree. Well, I think the defendant probably shouldn't go to trial at all. Because anything they do in going to trial, if they're convicted, is going to subject them to all kinds of penalties. I thought that the problem here, but maybe I missed it, was that she obtained a severance. She got her trial separated from his because the court, to believe that there was going to be testimony so that there was a conflict or a valid reason for doing it, and then it turned out there wasn't. Right. What happened was Reyes initially ---- I thought her lawyer did that. What happened? Okay. Go ahead. Her lawyer did it. But you say she did it. Well, let me just explain what happened. The investigation comes up, and Reyes says in the investigation there was no backdating. In the meantime, Jensen gives an interview to the FBI. She says there was backdating. Now, then they're indicted jointly. They're going to have a joint trial. She wants to sever. She brings a motion to sever. In support of her motion to sever, a declaration is filed. The declaration is Reyes's declaration. And in that declaration, Reyes says basically there was no backdating. Options were priced on the date of the grant date, which, of course, was not true because they were granted on a subsequent date. She knows that's false because she's, of course, the one who provided Reyes with the dates to put on the option minutes. But even knowing that it's false, she lets her lawyer proffer that declaration to the court, and her lawyer says you have to give them separate trials because Reyes saying that he didn't backdate and Reyes saying I told Jensen I didn't backdate is exculpatory as to Ms. Jensen. And he'll come and testify at her trial if you sever them. But, of course, Jensen knew that Reyes's statements were false because she's the one who's giving him the date to use in retrospect to find an options date. They're doing that together. And the court says — I'm sorry, Your Honor. Go ahead. Finish what you're saying. And the court says, oh, well, if he's going to come testify for you and say no backdating was going on, that would be exculpatory. So, okay, I'm going to give you motions to sever. And, of course, when they go to trial, both defendants' defense isn't that there wasn't any backdating. The defense of both of them was there was backdating, everybody knew it, and, you know, we didn't know the accounting implications. And the court found afterwards he had been lied to, and he had been lied to in order to give them severance. And he gave both of them. Have you reported the lawyers to the bar and asked that they be sent to jail or disciplined? No, I have not. No. But the defendant should be sent to jail because the lawyer asked for the severance. Well, the defendant's already going to jail and her severance was increased on the basis of that. No, getting extra time in jail because the lawyer made a motion and got a witness. But the lawyer is perfectly fine to go around practicing deceiving the court, as you put it. And lying to the court. Well, the issue before The lawyer presented this, not the defendant. The issue before this Court is should an enhancement be given to the defendant. Whether or not you think what the lawyer did was within the bounds of ethical behavior, you know, we could talk about that. But that's nothing that the Court needs to decide for this. What about every time in a criminal trial a lawyer puts on a witness that a jury doesn't believe? Is the defendant punished additionally? Because obviously the jury thinks the witness is lied, and the defendant must have known that. My point, and I think the point for the Court, and you may disagree with it, is the defendant shouldn't be able to sit idly by while she knows her lawyer is proffering false statements on her behalf. Well, doesn't that happen in every criminal trial when the defendant is convicted? No. That the lawyer has presented witnesses who offer unfruitful statements? The fact that the jury may not have believed the witness doesn't necessarily mean the witness was lying. Or that the defendant had reason to know that. You have a jury finding beyond a reasonable depth that defends witnesses to what is earned? The statement that was given was hers? The statement that was proffered to the Court was the declaration of Reyes. But it was Jensen's motion. Okay. Okay. I just wanted to make a brief comment about the no-knowledge clause. Two points. The first point, and I'll keep it very brief, because, you know, we think the Court can hold on this, but it need not. Which is that we think she was convicted of the statute, in which case the no-knowledge clause doesn't even apply. If you look at the jury verdict, which is at tab 62 of the excerpts, it says, you know, we find her guilty in violation of, and it says count to, and it says in violation of, and it gives the statutes of the statute. And it also has the rule provision, and it doesn't have an or there. It just has all four of them there. And I think that on its face shows that the jury found her guilty of all of them. But even if you believe that the no-knowledge clause might apply to her and that she was only convicted of the rule, the Court was correct that what the no-knowledge clause requires is that the defendant show that she has no knowledge that it's contrary to law. That's what the defendant even argued to the district court, and the defendant even cited Turalo and Lilly, the cases that we're now relying on, and that's the standard the Court applied. And we think that's correct. It's what Turalo says that clause meant. It's what Lilly says that clause meant. It's what the Second Circuit and Schwartz says that clause meant. And there's no authority for the defendant's position that she's advancing today, which is different from what she advanced in the district court. And finally, we think the Court was right in its finding. Not only was there evidence that Jensen knew what she was doing was wrong and that she told the other HR employees not to e-mail about it, that she told them not to use the lowest price because it would be too obvious, but there was also evidence that she knew that it had accounting implications. Linda Cuevas said Jensen talked to her about compensation expenses. Jensen knew that the grant minutes went from the HR department to the finance department, and Jensen received several e-mails saying we need the grant minutes to do a smooth audit. Kagan in the negative. Thank you. I'll start with that last point. First of all, although there's evidence that the grant minutes were requested by finance in connection with some sort of auditing activity, there's no evidence that Jensen understood the accounting consequences of putting these past dates in the ray lines of the grant minutes. There's no evidence that she understood that what she was doing could have serious accounting consequences for how compensation charges are taken in respect to stock options. Secondly, on the no knowledge point, the government claims that we are not entitled to invoke the clause because the verdict form showed that she was convicted under both the statute and the regulations, and the knowledge clause applies only if you're convicted solely under the regulations. If you look at that form, the jury had no way to express the viewpoint that yes, we were convicted under the more broadly phrased regulation, but not under the more narrowly phrased statute. If that was what it found, it had two unpalatable choices, either acquit her altogether or check yes, guilty, even though the verdict form inaccurately described what they had found. And the district court, we think correctly, decided I am not going to speculate about what the jury actually found on a topic of this importance. I heard the government say that our interpretation of United States versus Turalo is contrary to U.S. versus Santos and other cases that say you should interpret statutory terms consistently, quite the contrary. We say that Turalo shows that willfully and knowingly should be consistently interpreted as requiring knowledge of unlawfulness whenever they're used together to define a crime under the 1934 Act. Consistency is entirely on our side. With respect to the obstruction. I'm out of time? Then I'll sit down. Thank you. Thank you. The matter just argued is submitted for decision. That concludes the court's calendar for today, and the court stands adjourned. Thank you.
judges: Schroeder, Reinhardt, Pollak